William **ELLIOTT**, Plaintiff–Appellant,

v.

Duane **DEDELOW**, et al., Defendants– Appellees.

No. 04–1573.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 14, 2004.*

Decided Oct. 19, 2004.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

William Elliott, Hammond, IN, pro se.

David W. Weigle, Weigle & Associates, Hammond, IN, for Defendants–Appellees.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

## ORDER

After the City of Hammond, Indiana, terminated his probationary employment, William Elliott brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 to 12213; and 42 U.S.C. § 1983, alleging that he was the victim of racial harassment and that he was fired and refused reemployment because he is African American and a diabetic. Elliott named as defendants the city and its mayor, deputy mayor, and personnel director, but alleges no personal involvement by the three individuals in the events underlying his suit. The district court granted summary judgment for the defendants, and we affirm.

The city hired Elliott on a 90–day probationary basis in the summer of 1996. A few weeks shy of the end of his probationary period, Elliott arrived 20 minutes late one morning and was sent home and then fired. According to the defendants, Elliott was terminated because of his late arrival and a poor attitude. Elliott subsequently applied for other city positions, but was not rehired.

Before filing suit, Elliott lodged a charge of discrimination with the Equal Employment Opportunity Commission alleging racially discriminatory hiring practices by the city. The EEOC issued Elliott a right to sue letter, and he brought suit in federal court. In dismissing the action at summary judgment, the district court concluded that Elliott had not exhausted administrative remedies with respect to his racial harassment and ADA claims. The district court went on to explain, however, that summary judgment was in any event appropriate as to all of his claims because Elliott had failed to present sufficient evidence to establish a prima facie case as to any of them.

■ As the defendants implicitly concede, the district court's reliance on lack of exhaustion as a basis for resolving Elliott's claims is effectively limited to the claim of disability discrimination. While it is true that a plaintiff suing under Title VII or the ADA must first have exhausted his administrative remedies, § 2000e–5; § 12117(a), there is no exhaustion requirement applicable to § 1983, *see Peters v. Renaissance Hotel Operating* Co., 307 F.3d 535, 551 n. 13 (7th Cir.2002). A plaintiff cannot bring claims that were not included in the EEOC charge, unless the claims in the suit are reasonably related to, or can be inferred from, the allegations in the charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). To be reasonably related, there must be a factual relationship between the claims in the charge and in the complaint. *Cheek*, 31 F.3d at 501. Accordingly, as to the ADA claim included in Elliott's complaint, the district court was plainly correct that these exhaustion standards were not met; Elliott's charge alleges racially discriminatory hiring practices but nowhere mentions the ADA or his own particular disability. But as to Elliott's race-related claims, the defendants have never contended that the charge of discrimination was inadequate to satisfy the exhaustion requirement, even as to the claim of racial harassment. And since that claim would survive under § 1983, its inclusion or exclusion from the charge of discrimination is not dispositive.

■ We thus turn to the merits of the race-discrimination claims, and because the same analysis governs claims of intentional discrimination under both Title VII and § 1983, we make no further mention of the latter. *See Steinhauer v. DeGolier*, 359 F.3d 481, 483 (7th Cir.2004); *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 566 n. 6 (7th Cir.2000). Elliott claims that he was subjected to a racially hostile work environment and that race was also the reason he was fired and not rehired. We can easily dispose of the first of these claims. In order to survive summary judgment on a claim that an employer created or tolerated a hostile work environment, a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment. *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336, 342–43 (7th Cir.2001). Elliott presented no evidence of any racial harassment in the workplace; indeed, the only workplace event Elliott discusses in his summary judgment evidence is his termination.

■ All that remains is Elliott's claim that the city based its decisions to fire and not rehire him on his race. Elliott submitted no direct evidence of discrimination and thus proceeded under the indirect method of proof set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discrimination as to the discharge, Elliott had to show that (1) he is a member of a protected class; (2) he was meeting the city's legitimate job expectations; (3) he experienced an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir.2004). Elliott did not demonstrate that he was meeting legitimate job expectations, nor did he present evidence of other probationary employees outside of his protected class who were tardy but were not terminated. Elliott admitted he was late to work, and he did not dispute the defendants' evidence that his supervisor had previously impressed upon him the importance of being on time. Nor did he ever dispute the defendants' evidence that even before the

day he was late he had expressed dislike for his assigned duties. Nothing in this record even hints that race played a role in Elliott's termination, so on this claim summary judgment was appropriate.

■ Elliott's failure to present sufficient evidence is also fatal to his failure-to-hire claim. To have established a prima facie case for failure-to-hire, Elliott was required to show: 1) he is a member of a protected class; (2) he was qualified for an open position for which he applied; (3) his application for employment was rejected; and (4) the city filled the position with someone not of Elliott's protected class, or left the position open and continued to seek applicants of Elliott's qualifications. *Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1174 (7th Cir.2002); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 454 (7th Cir.1999). Elliott did not present evidence that he applied for positions that he was qualified or that any positions he did apply for were left open or filled by persons outside of a protected class (and it is unclear how many positions Elliott applied for). The defendants present evidence that Elliott's qualifications suited him for only one job—police janitor—but there is no indication Elliott even applied for this position. Accordingly, on this claim summary judgment likewise was appropriate.

AFFIRMED.